Randall Saunders
Enfield Correctional Institution
Inmate #253100



**United States District Court**
**District of Connecticut**

312CV00581 WWE

Randall Saunders
plaintiff
   v.
Blair Vinton
Neva Lloyd
Hector Rivera
Does 1 thru 3

Case # 3:12cv581(WWE)

Complaint for damages

I.    This is a complaint for monetary damages and declaratory relief brought under 42 U.S.C. § 1983, § 1985 (2) and § 1986 in connection with the named defendants whom while acting under the color of the law conspired to and did violated the plaintiff's due process right to access courts in violation of Article 4 of the U.S. Constitution in addition to the privileges and immunities accorded citizens in the first and fourteenth amendments to the U.S. Constitution. Jurisdiction is based upon 28 U.S.C. § 1331, § 1332 and § 1343.

The court also has supplemental jurisdiction over state law claims.

II.    Parties

    The plaintiff Randall Saunders is a self-represented inmate in the custody of the department of correction at Enfield correctional facility.

    Defendant Blair Vinton is a captain currently employed as the administrative captain at Enfield correctional facility.

    Defendant Neva Lloyd is a lieutenant currently employed as a shift supervisor at Enfield correctional facility.

    Defendant Hector Rivera is a correctional officer currently employed as the

mailroom and telephone monitor at Enfield correctional facility.

Defendants Doe 1 thru 3 are to be named.

III. All defendants are sued in their individual capacity for monetary damages and in their official capacity for declaratory relief.

IV. Statement of facts

1. At a hearing on September 28, 2011 before *Solomon, J.*, the plaintiff[1] requested and received permission to proceed self-represented in the appeal from his habeas trial. At this hearing attorney Martin Zeldis, chief of legal services, state of Connecticut, stated he was going to send the entire appellate file to Saunders at the Enfield Correctional Institution.

2. December 17, 2011 Saunders wrote to attorney Zeldis requesting that he forward that file as soon as possible. Zeldis responded on December 21, 2011 clearly stating that he had sent that file on October 4, 2011, he attached a copy of the transmittal letter which stated "Please take care to maintain these files as there are no copies."

3. After being informed that the original appellate file had been sent to Enfield C.I. over 2 months earlier, a search was requested by way of the officer in the admissions and processing room (A/P room).

4. That officer called the central post office and spoke with officer McClain whom after an extensive search called the A/P room and confirmed no such package was in the central post office.

5. On January 3, 2012 at 1:30 PM Saunders was summoned to the shift supervisor's office. Upon arrival defendant Lloyd had a box at her feet that she

---

[1] Hereinafter referred to as Saunders.

2

presented as the file in question. She clearly and unequivocally stated that this file was at Osborne Correctional Institution where it remained since its delivery on or about October 12, 2011.

6. A cursory visual inspection of the box revealed it was clearly addressed to Saunders at Enfield C.I. with "legal mail" stamped in excess and a return address of chief of legal services. It also plainly appeared to have been opened. Defendant Lloyd reached down and pulled on the box cover, that cover opened about 8 inches before the reattached disheveled tape prevented it from opening further. Defendant Lloyd stated, "It wasn't opened all the way."

7. When defendant Lloyd removed the cover, the contents of this legal file had been literally dissected. The formerly bound documents were out of numerical order with binders thrown to the bottom of the box, further review confirmed known original documents and evidence were removed and remain unaccounted for.

8. Saunders objected and requested Lloyd to return this file to its sender to which she replied, "How do you suggest I do that?" and refused to return it to attorney Zeldis.

9. When Saunders objected, defendant Lloyd retaliated and ordered him to relinquish his additional work product files which are now stored out of his custody and control. Days later Saunders requested access and was told, "nobody has a key".

10. Defendant Vinton entered the supervisor's office, Lloyd instructed Saunders to pose his questions to Vinton. Saunders asked Vinton if the department of correction is going to take financial responsibility for storing thousands of dollars

in legal books and documentation to which he replied, "You can just send them home."

11. January 8, 2012 Saunders filed an administrative remedy. These documents were sealed in a manila envelope with "Administrative Remedy, time sensitive legal issue" written on the envelope with Saunders housing unit and number in top left corner.

12. On January 12, 2012 Saunders was summoned to the grievance coordinator's office. Upon arrival he was informed that his grievance was sent to Carl Robinson Correctional facility. He was also informed that the administrative remedy form was incorrect and the coordinator would not be able to address his concerns.

13. Saunders informed the coordinator that upon his request a corrections officer went to the administrative building and was provided with that form. He was instructed to rewrite the complaint, make it fit within 1 page. When Saunders asked about attached exhibits, he was simply told, "I don't know what to tell you."

14. Saunders dictated his grievance over the phone to his power of attorney and had a copy sent to commissioner of correction with a copy to the warden of Enfield C.I. The deputy warden maintained he will investigate to resolution.

Acts of Retaliation

15. Prior to being transferred to Enfield C.I. Saunders was directed to send home his legal files with further direction that if he needed documentation his power of attorney[2] should stamp "legal correspondence" on the package and it would be

---

[2] Power of attorney designation was specific to avoid claims of 3rd party waiver that could subject files to subpoena.

4

treated as priority mail and opened in his presence.

16. Upon arrival at Enfield C.I. defendant Vinton directed Saunders to have all "legal correspondence" sent directly to him. Saunders complied and subsequently suffered delays in excess of 20 days.

17. During these delays Saunders had a habeas corpus trial to prepare for and an actual innocence claim pending before the U.S. District Court. (3:10CV410 MRK)

18. Saunders filed a motion for judicial intervention (Doc. #21) on October 5, 2010 requesting an order directing the staff at Enfield C.I. to deliver mail marked "legal correspondence" specifically from P.O. Box 1598, North Beach, MD 20714 without delay. Counsel for the defendants claimed Saunders was not entitled to this specific "legal correspondence".

19. In an attempt to buttress the claim above defendant Vinton authored an affidavit fabricating facts to include, "When FedEx Express packages arrive at this facility they are taken to a specific area and disseminated after inspection. Once Saunders made him aware of this correspondence it was retrieved from that area and given to Saunders." The fact remains all legal correspondence from the Maryland (MD) address comes U.S. mail and is tracked to insure prompt delivery. At no time has any package been sent or received via Federal Express. The subject documents were addressed to Captain Vinton at his request.

20. In the court's ruling (Doc. #26) order on motion for intervention, *Kravitz, J.* clearly opined, "Mr. Saunders is entitled to receive the legal correspondence" referenced.

21. While deputy warden Burges was investigating Saunders administrative remedy,

5

he notice an envelope clearly marked legal correspondence on Vinton's desk that was opened. Burgos directed Vinton to write an incident report in accord with Directive 10.7 @ 6 J-3.

22. Vinton retaliated by summoning Saunders and directing him to inform his power of attorney that she can no longer stamp "legal correspondence" on his work product despite a federal ruling. Defendants Vinton and Rivera open his clearly marked legal correspondence outside Saunders presence as a matter of routine practice.

23. Legal research and documents from Saunders' files, all relevant to current state and federal actions are excessively delayed if they are received at all.

24. At a meeting on February 24, 2012 at 1:15 PM in the visiting room deputy warden Burgos informed Saunders of his conclusive findings. Deputy warden Burgos conceded that the administrative remedy process is complete because it offers no relief.

V.  Claims for Relief

25. Defendant Vinton, Lloyd and Rivera's conspiracy to cover up the destruction of Saunders original appellate file by claiming it was at another facility has done irreparable damage to Saunders' post conviction redress and has impeded his due process right to access the courts in violation of the first and fourteenth amendment to the U. S. Constitution.

26. The agreement between defendants Vinton, Lloyd and Rivera to delay the delivery of the destroyed files and fabricate a history designed to deceive and misguide violated the plaintiff's due process right to access the courts.

27. Defendants Vinton, Lloyd and Rivera's intentional withholding and destruction of critical legal documents has caused additional expenses in motion practice and missed deadlines that precluded relief. Instead of searching for and revealing the true circumstances the conspirators did everything in their power to cover up and conceal the facts within their sole control.

28. Defendant Vinton is the moving force in this conspiracy and exhibited deliberate indifference acting with a culpable state of mind encouraging and condoning his subordinates to fabricate a story designed to misrepresent the chain of custody and subsequent destruction of the plaintiff's original appellate file.

29. Defendant Vinton in retaliation to Saunders complaint instructed him to direct his power of attorney to cease and desist marking his work product "legal correspondence" despite rulings of the district court resulting in delay and return of pertinent legal documents.

30. Defendant Vinton failed to properly train and supervise defendant Rivera in the timely and proper handling of clearly marked legal correspondence and/or this constitutional violation occurred with his knowledge and consent.

31. Defendant Lloyd's retaliation by removing Saunders case files from his room after 2.5 years because he objected to the mishandling and destruction of his original appellate file has severely impeded his access to prepare and file meaningful documents to pending court actions.

VI. Prayer for relief

Wherefore the plaintiff prays for relief as follows:

32. That the court enter a judgment in the defendant's official capacity declaring the

7

acts of Vinton, Lloyd and Rivera violate the rights of the plaintiff under the first and fourteenth amendments to the United States Constitution.

33. That the court award general damages in the amount of $10,000.00 (ten thousand dollars) in defendant's Vinton, Lloyd and Rivera's individual capacity.

34. That the court award punitive damages in the amount of $10,000.00 (ten thousand dollars) in defendants Vinton, Lloyd and Rivera's individual capacity.

35. That the court grant such other relief to plaintiff as it deems appropriate.

Respectfully submitted,

Randall B. Saunders
plaintiff